**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER PAUL JIMENEZ, | § | |
| ALVARO FIDEL ORTEGA, AUDREY | § | |
| ELENA DAVIS, | § | |
| *Plaintiffs* | § | |
| | § | SA-20-CV-00575-XR |
| -vs- | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| *Defendant* | § | |

## ORDER

On this date, the Court considered the Government's motion to dismiss Plaintiffs' claims for lack of jurisdiction (ECF No. 7), Plaintiffs' response (ECF No. 11), and the Government's reply (ECF No. 12). After careful consideration, the Government's motion to dismiss is **GRANTED**.

## BACKGROUND

Plaintiffs Christopher Paul Jimenez, Alvaro Fidel Ortega, and Audrey Elena Davis bring this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671 *et seq.* and 28 U.S.C. §1346(b) to recover for injuries they sustained as a result of a motor vehicle collision.

Plaintiffs allege that on or about July 28, 2018, they were traveling south on US Highway 281 near Encino Rio in San Antonio, Bexar County, Texas, when their vehicle was struck by a commercial tractor trailer (the "mail truck"), operated by Michael Gene Grayson, Jr. ("Grayson"), and owned or leased by Le Mar Holdings Inc. d/b/a Edwards Mail Service, Inc. ("EMS"). Plaintiffs assert that Grayson "was inattentive" and "failed to control his speed" while driving the mail truck and was at all times acting in the course and scope of his employment with the United States Postal Service ("USPS" or the "Postal Service").

At the time of the collision, Grayson was hauling U.S. mail pursuant to a four-year highway contract routes ("HCR") contract, HCR 780M3 (the "Transportation Contract"), between the Postal Service and EMS. *See* ECF No. 7-2 at 1, 120. According to Antoine Slaughter, the Manager of Local Distribution Transportation and Contracting Officer for the Postal Service, the Postal Service routinely enters into contract with independent contractors, known as "HCR Suppliers," when it determines that the use of contractors, rather than USPS employees, is "more cost-effective, fiscally prudent, or in furtherance of promoting a safer and more efficient distribution of the mail." ECF No. 7-1, Slaughter Decl. ¶¶ 2–4; *see also Jones v. United States*, No. 1:12–cv–00290–SEB–DKL, 2013 WL 2477288, at *1 (S.D. Ind. June 7, 2013). HCR contracts are awarded based on a competitive process in which proposals are solicited and potential contractors submit offers to the USPS to perform the requested services. ECF No. 7-1, Slaughter Decl. ¶ 5. HCR Suppliers are required to comply with all applicable federal, state, and local laws as well as executive orders, rules and regulations applicable to their performance under the HCR contracts. *Id.* EMS has been awarded multiple contracts as an HCR supplier with the Postal Service to provide mail transportation services between USPS locations. ECF No. 7-1, Slaughter Decl. ¶ 6; *see also In re Le-Mar Holdings, Inc.*, No. 17-50234-RLJ-11, 2017 WL 7050634, at *3 (Bankr. N.D. Tex. Nov. 9, 2017).

Under the Transportation Contract, Postal Service officials were required to "supervise and administer" the Contract, *id.* at 61, and EMS was charged with "supervis[ing] its operations and the operations of its subcontractors." *Id.* at 72. The Contract included schedules addressing the frequency, timing, and service requirements for the transportation routes, with loading and unloading times and destinations determined by the Postal Service. *Id.* at 4–23. It did not, however, specify the routes that EMS drivers should take between USPS facilities. *See id.*

EMS was required to furnish its own vehicles and safety equipment in accordance with the exacting specifications of the Contract and to cover its own fuel costs. ECF No. 7-1, Slaughter Decl. ¶¶ 13−14; *see* ECF No. 7-2 at 24−34. Though USPS retained the right to perform random inspections of EMS vehicles and equipment to ensure compliance with the terms of the Contract, *see id.* at 42, 64, 66, EMS was solely responsible for the maintenance of its equipment and for adequately insuring motor vehicles used in the performance of its contractual duties. ECF No. 7-2 at 35, 38, 40−41. To the extent that EMS used any USPS equipment, it was liable to the Postal Service for any loss or damage to the equipment, without regard to negligence or fault. *Id.* at 37. The Postal Service was liable for EMS equipment, however, only when the damage or loss was caused by the negligence of a USPS employee. *Id.* Not only was EMS responsible for maintaining the safety of its own equipment and drivers, but it also agreed to bear responsibility for any damage to the persons or property of others arising from the performance of its duties under the Contract. *Id.* at 72.

EMS was also  required to provide its own drivers. Though EMS was responsible for hiring the drivers, either as EMS employees or as subcontractors, all drivers were required to satisfy certain contractual screening and identification requirements, which included submitting to background checks in order to obtain the security clearance required to access postal facilities and the U.S. mail. *Id.* at 38−39. EMS was also required to immediately report any arrests or convictions of its hired drivers to the administrative official of the Postal Service. *Id.* at 38. However, EMS drivers were not entitled to participate in or receive USPS worker's compensation benefits, retirement benefits, or annual or sick leave. ECF No. 7-1, Slaughter Decl. ¶ 20. EMS was issued a Form 1099 annually by the Postal Service for payments received under the Transportation Contract as an independent contractor. *Id.* ¶ 18. EMS, in turn, was responsible for directly compensating its

employees and subcontractors, including Grayson, for their work under the Contract. *Id.* ¶ 24; *see* ECF No. 7-2 at 71 (requiring EMS to pay employees in compliance with applicable wage and hour regulations issued by the U.S. Department of Labor). The Transportation Contract mandated that EMS and its employees "maintain a neat, clean and professional appearance," though driver uniforms were not required. ECF No. 7-2 at 36.

Plaintiffs seek damages from the United States under three separate theories of liability: (1) *respondeat superior* liability for Grayson's alleged negligence; (2) direct liability against the USPS for negligently contracting with EMS and for its negligent hiring, retention, training, and supervision of Grayson; and (3) gross negligence. The Government moves to dismiss this action for lack of subject matter jurisction, arguing that the United States has not waived its sovereign immunity with respect to Plaintiffs' claims. ECF No. 7. Rather than address the merits of the Government's immunity, Plaintiffs instead argue that the motion is premature and seek the Court's leave to conduct limited discovery on whether Grayson is in fact an independent contractor.

Under the doctrine of sovereign immunity, the federal government cannot be sued in its capacity as a sovereign unless it consents to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). For the federal government to consent to be sued, Congress must waive sovereign immunity by explicitly extending to federal courts subject-matter jurisdiction over a specified cause of action. *Id.* The FTCA waives sovereign immunity and allows private individuals to sue the federal government for the torts of its employees by granting federal courts exclusive subject-matter jurisdiction over:

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

4

28 U.S.C. § 1346(b)(1). However, the FTCA precludes recovery for punitive damages and contains a number of exceptions to this waiver of sovereign immunity, including the discretionary function and independent contractor exceptions at issue here. *See* 28 U.S.C. § 2674; 28 U.S.C. § 2680.

## DISCUSSION

## I.     Legal Standards

The Government moves the Court to dismiss this case for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1). Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Typically, in determining whether subject-matter jurisdiction exists, "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). However, the Supreme Court has cautioned that "this principle is 'unhelpful' in the FTCA context, where 'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute.'" *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 491–92 (2006) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)) (citations omitted). Thus, the proper objective of a court attempting to construe one of the exceptions to the FTCA's sweeping waiver of immunity is to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Id.*

In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *United States v.*

*Freeman*, 556 F.3d 326, 334 (5th Cir. 2009). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

While the plaintiff bears the burden of showing an unequivocal waiver of sovereign immunity, it remains an open question which party retains the ultimate burden of proof on the applicability of the discretionary function exception. *St. Tammany Parish v. FEMA*, 556 F.3d 307, 315 n.3 (5th Cir. 2009). Regardless of which party bears the ultimate burden of proof, at the pleading stage, the plaintiff must allege a claim that is facially outside the exception. *Id.* At the summary judgment stage, the plaintiff must submit evidence that the claim is facially outside the exception. *Morales v. United States*, 371 F. App'x 528, 532 (5th Cir. 2010).

## II.    Analysis

### A.  Plaintiffs' derivative liability claim is barred by the independent contractor exception

The FTCA waives immunity for claims based on the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable under state law. 28 U.S.C. § 1346(b). The FTCA's definition of "employee of the government" includes "officers or employees of any federal agency" and the term "federal agency" excludes "any contractor with the United States." 28 U.S.C. § 2671. Thus, the United States is not generally liable for the torts

of government contractors or their employees. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979). Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver. *See Dalehite v. United States*, 346 U.S. 15, 30–31 (1953).

In this case, Plaintiffs allege that Grayson was at all times a federal employee acting within the scope of his employment, and that he negligently "failed to control his speed" and "was inattentive" while he was operating the mail truck. ECF No. 1 ¶ 11. For the United States to be liable for the torts of the employees of EMS, those employees must be shown to be "employee[s] of the Government" as that term is used in the FTCA. *See Logue v. United States*, 412 U.S. at 526. The critical element in distinguishing an agency from a contractor is the power of the federal government "to control the detailed physical performance of the contractor." *Orleans v. United States*, 425 U.S. 807, 814 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528). In *Orleans*, the Supreme Court discussed its prior decision in *Logue*:

> In *Logue* this Court held that employees of a county jail that housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons were not federal employees or employees of a federal agency; thus, the United States was not liable for their torts. Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees. In short it could take action to compel compliance with federal standards, but it did not supervise operations.

*Id.* at 814–15. Thus, the Court stated, the question is not whether the contracting agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government. *Id.* at 815; *Logue*, 412 U.S. at 526 (noting that the distinction between servant and agent relationship turns on authority of principal to control the physical conduct of the contractor in performance of the contract). The Fifth Circuit has

referred to the guiding test as the "daily-detailed-control" test. *Cavazos v. United States*, 776 F.2d 1263, 1264 (5th Cir. 1985).

The Supreme Court added that the applicability of regulations that "fix specific and precise conditions to implement federal objectives . . . [does] not convert the acts of . . . state governmental bodies into federal governmental acts." *Orleans*, 425 U.S. at 816 (footnote omitted). Further, the ability to compel compliance with detailed federal regulations does not change a contractor's personnel into a federal employee. *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005).

The Fifth Circuit has observed that, "even though control of the detailed physical performance of the actor may be the most critical factor in identifying an employee, it is not necessarily the only factor." *Broussard v. United States*, 989 F.2d 171, 175 (5th Cir. 1993). Indeed, in addition to control, the Fifth Circuit has counseled that courts should also consider the non-exhaustive factors identified in the Restatement (Second) of Agency § 220 in determining whether a tortfeasor is a government employee or an independent contractor. *See Linkous*, 142 F.3d at 275 (citing Restatement (Second) of Agency § 220 (1958)). These factors include the individual's outside work, if any; the type of occupation; the skill required; whether the employer or worker provides the instrumentalities required to do the work; the length of the relationship; method of payment; and whether or not the parties believe they are creating the relation of master and servant, among others. *Id.* at 276.

Numerous factors demonstrate that EMS served as an independent contractor and not an employee of the Postal Service. It is true that the Transportation Contract contains various specifications and requirements that amount to standards by which EMS was required to deliver its services under the Contract, but it is clear that the Contract did not give the Postal Service the right or the discretion to control and supervise the daily operations and activities of EMS and its

drivers. It is undisputed that EMS, rather than the Postal Service, was responsible under the Contract for hiring, training, paying, and supervising its drivers, including Grayson. Additionally, EMS supplied Grayson with the equipment used in performance of the Contract, albeit in conformance with detailed specifications imposed by the Postal Service. *See* ECF No. 7-2 at 24–34. EMS was responsible for the maintenance and upkeep of that equipment, and for obtaining adequate liability insurance. *Id.* at 35, 38, 40–41. The Postal Service was not responsible for any loss or damage to EMS equipment unless it was caused by the negligence of USPS employees. *Id.* at 37.

Plaintiffs suggest that the "daily-detailed-control" test is satisfied here because Postal Service officials "supervise and administer" the Contract, which involves confirming compliance with its terms. ECF No. 11 at 6. The Contract includes "statements of work containing schedules, times, frequencies, and other controlling and identifying information for route services" and "specifies loading and unloading times and destinations determined by USPS." *Id.* However, such "[c]ontractual provisions directing detailed performance generally do not abrogate the contractor exception. The United States may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Autery*, 424 F.3d at 957 (quoting *Orleans*, 425 U.S. at 816); *see Estate of Anderson-Coughlin v. United States*, No. 3:16-cv-01492 (JAM), 2017 WL 6624020, *4 (D. Conn. Dec. 28, 2017) ("By imposing these requirements, the Postal Service was acting as a general overseer of the delivery of mail under the contract, but the job of supervising drivers' conformity with the requirements under the contract was delegated to Beam.").

Even where the contract imposes strict requirements about *how* suppliers under the contract should perform their day-to-day duties, courts will not necessarily conclude that the government

agency exercises sufficient control to create an employer-employee relationship. *See, e.g.*, *Chapman v. United States*, 480 F. Supp. 3d 601, 610–11 (M.D. Pa. 2020) (applying independent contractor exception to bar the plaintiffs' claims where the HCR contract required driver to wear a uniform and set forth a detailed mail delivery route, including the precise order of turns down different streets); *Reyes Colon v. United States*, No. 18-1225 (PAD) 2019 WL 165578, at *1 (D.P.R. Jan. 10, 2019) (concluding that contractual provisions requiring HCR Supplier to "(1) pick up and unload mail at a certain time each day; (2) perform additional service trips as needed within 4 hours of notification; (3) modify its delivery schedule as needed; and (4) use vehicles that meet certain technical specifications . . . . do not show [that the USPS] directed [the HCR Supplier]'s day-to-day operations") (citing *Carroll v. United States*, 661 F.3d 87, 99 (1st Cir. 2011) (finding independent contractor status even though the contract allowed the government to specify work schedules, frequencies and methods)).

Here, there is no evidence that, in supervising and administering the Contract, the Postal Service controlled the daily detailed performance of EMS and its drivers. That control was entrusted entirely to EMS. The Transportation Contract explicitly provides that EMS was responsible for supervising, personally or through representatives, the operations of any of its employees or subcontractors who provided services under the Contract. ECF No. 7-2 at 72. While the Transportation Contract does contemplate random inspections by USPS employees of equipment used to perform transportation services, *id.* at 42, and screening of contract drivers hauling mail and accessing postal facilities, *id.* at 38–39, these terms do not rise to the requisite level of supervision necessary to conclude that EMS or its drivers were government employees. *See Battaglia v. United States*, 495 F. App'x 440, 441–42 (5th Cir. 2012) (government authority to monitor compliance does not itself create liability for the United States) (citing *Alexander* v.

*United States*, 605 F.2d 828, 833 (5th Cir. 1979)); *Guile v. United States*, 422 F.3d 221, 229 n.10 (5th Cir. 2005) ("A retained right of inspection does not defeat the independent contractor exception unless the government actually supervises the contractor's day-to-day activities."); *Reyes Colon*, 2019 WL 165578, at *2 ("That the contract required [the HCR Supplier] to abide by certain standards in its hiring and vehicle maintenance or submit to inspections did not transform it into a federal agency. . . . This level of oversight [does not] reach the level of day-to-day control and supervision that is required to demonstrate for FTCA purposes that a contractor is an employee.").

Many courts have recognized that drivers hauling mail under similar contracts are not Postal Service employees. *See Estate of Anderson-Coughlin*, 2017 WL 6624020, *4 (collecting cases); *Jones v. United States*, No. 1:12–cv–00290–SEB–DKL, 2013 WL 2477288, at *7 (S.D. Ind. June 7, 2013) (same); *see, e.g.*, *Arbuthnot v. United States*, No. 17-1667-JWD-RLB, 2018 WL 6528461, at *2 (M.D. La. Dec. 12, 2018) (concluding that claims against Postal Service were barred by the independent contract exception where "[t]he contractors hire[d] their own drivers and provide their own equipment to deliver mail on specified routes"); *see also Smith v. United States*, 727 F. Supp. 2d 533, 536 (E.D. Tex. 2010) ("The USPS maintains only administrative control over [suppliers] such as Edwards. The USPS can monitor Edwards to ensure that it is performing its contractual duties, but it does not have any daily hands-on supervision or oversight of how Edwards performs its contractual duties.") (citations omitted). Though these cases are not controlling, they are highly persuasive because of the similarity of the underlying contractual arrangements and applicable legal standards. The Court finds no reason to depart from their reasoning here. Thus, the Court concludes that the evidence the Government has offered in support of its motion—the declaration of Antoine Slaughter and relevant portions of the Transportation

Contract—demonstrates that USPS did not exercise sufficient control over Grayson or EMS to render either a government employee at the time of the collision.

Plaintiffs do not deny that the relationship between Grayson and the Postal Service is governed by the Transportation Contract, but instead contend that the Government's motion is premature and ask the Court to permit discovery in accordance with Rule 56(d) of the Federal Rules of Civil Procedure. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

"While 'Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted,' the party filing the motion must demonstrate 'how additional discovery will create a genuine issue of material fact.'" *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422–23 (5th Cir. 2016) (citations omitted) (quoting *Am. Fam. Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). Specifically, the party seeking discovery must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (citing *Bile*s, 714 F.3d at 894). "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Id.* (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

The Government correctly observes that Plaintiffs failed to provide an affidavit or declaration in support of their request for additional discovery. ECF No. 12 at 2 n.1. Despite the text of Rule 56(d), courts have permitted an extension of time for discovery before ruling on a motion for summary judgment without requiring an accompanying affidavit. *See, e.g.*, *Worldwide*

*Oilfield Mach., Inc. v. Ameriforge Grp., Inc.*, No. H–13–3123, 2014 WL 12600527, at *2 n.7 (S.D. Tex. Sept. 4, 2014) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266–67 (5th Cir. 1991) ("Although the preferred procedure is to present an affidavit in support of the requested continuance, so long as the nonmoving party indicates to the court . . . preferably in writing of its need for additional discovery, the nonmoving party is deemed to have invoked the rule.")). Thus, the Court will consider Plaintiffs' request for jurisdictional discovery despite their failure to comply with the letter of Rule 56(d).

District courts have broad discretion to permit jurisdictional discovery. *See, e.g.*, *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). "As the party opposing dismissal and requesting discovery, the plaintiff[ ] bear[s] the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Plaintiffs are not entitled to discovery "if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman*, 556 F.3d at 342.

Plaintiffs insist that "[t]he issue is not whether [they] will ultimately prevail, but whether they are entitled to offer evidence to support their claims." ECF No. 11 at 5. However, the cases Plaintiffs cite in support of this proposition involved motions under Rules 12(b)(6) and 12(c), which require the court to accept all well-pleaded facts as true and to construe the complaint in the light most favorable to the plaintiff. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007); *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654–55 (5th Cir. 2012). As previously discussed, however, in the context of a factual attack on a court's subject matter jurisdiction, no presumptive truthfulness attaches to a plaintiff's allegations and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413. A plaintiff's burden of demonstrating the need for jurisdictional

discovery is higher where, as here, "the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Freeman*, 556 F.3d at 342.

Plaintiffs have failed to satisfy their burden of demonstrating that jurisdictional discovery is warranted here. Plaintiffs do not dispute that the Transportation Contract governs the relationship between USPS, EMS, and Grayson. Instead, Plaintiffs assert that the Contract is "riddled with provisions which require further investigation which Plaintiffs cannot conduct without discovery." ECF No. 11 at 6. As an example, Plaintiffs note that the Transportation Contract "references USPS equipment utilized by drivers, but does not identify the equipment." *Id.* But Plaintiffs fail to explain how the requested discovery—identifying the USPS equipment that EMS used in carrying out its duties under the Transportation Contract—would be "likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman*, 556 F.3d at 342. The use of some equipment supplied by the Postal Service would not, on its own, render Grayson an employee of the federal government, especially in light of EMS's contractual obligation to supply its own vehicles and safety equipment.

Plaintiffs further observe that while the Transportation Contract provides that Postal Service officials will "supervise and administer the contract," "[t]here is no indication as to what may entail the supervision of a contract with drivers." ECF No. 11 at 6. But there is no evidence that the Postal Service ever contracted directly with any EMS drivers. Indeed, such an arrangement would seem to defeat the purpose of the Transportation Contract, which places burdens of hiring, training, supervising, and paying drivers squarely on EMS. Nor do Plaintiffs explain how the

Postal Service's supervision of such a contract would differ from its supervision of the Transportation Contract, which does not in itself render EMS drivers government employees.

Plaintiffs are not entitled to the discovery they request because they have neither explained what it will reveal nor offered any reason to believe that the Transportation Contract was applied differently than it was written. *See Arbuthnot*, 2018 WL 6528461, at *2 (denying request for jurisdictional discovery where the plaintiff "argue[d] that regardless of the express terms of the [] contract, the Postal Service *may have treated* [the drivers] as employees such that it would be liable for [the] purported negligence.") (emphasis added); *cf. Walding v. United States*, No. SA–08–CA–124–XR, 2009 WL 902423, at *14 (W.D. Tex. March 31, 2009) (permitting jurisdictional discovery where the plaintiffs had "submitted specific discovery requests that would produce evidence relating to the applicability of the independent contractor exception" to their claims of physical and sexual abuse and denial of medical care at a government detention facility).

Plaintiffs have not identified a single instance in which a court has found that a driver performing mail transportation services under a comparable contract should be considered an employee of the Postal Service. Plaintiffs' failure to provide, and the Court's inability to locate, such a case is not dispositive of Plaintiffs' request for discovery. Still, given the Postal Service's robust history[1] of successfully arguing that HCR Suppliers such as EMS and its drivers are independent contractors, Plaintiffs must offer more than "vague assertions that discovery will produce needed, but unspecified facts" to convince the Court that the discovery will be likely to

---

[1]     *See Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012), 694 F.3d at 859–860 (collecting cases and recognizing that the Postal Service has consistently and successfully argued that its HCR contractors are not its own employees but independent contractors for whom it bears no legal responsibility under the FTCA); *see, e.g.*, *Hines v. United States*, 60 F.3d 1442, 1446 (9th Cir. 1995) (affirming summary judgment for United States in FTCA action against the Postal Service for negligence of driver operating under mail transportation services contract because transport company was independent contractor); *Norton v. Murphy*, 661 F.2d 882, 885 (10th Cir. 1981) (same); *Tunder v. United States*, 522 F.2d 913, 915 (10th Cir. 1975) (same); *Fisher v. United States*, 356 F.2d 706, 708 (6th Cir. 1966) (per curiam) (same); *Lerma v. United States*, 716 F.Supp. 1294, 1297 (N.D. Cal. 1988) (same); *Duncan v. United States*, 562 F. Supp. 96, 100 (E.D. La. 1983) (same).

produce sufficient facts to overcome the Government's assertion of sovereign immunity. *Smith*, 827 F.3d at 423. "Sovereign immunity is an immunity from suit, not merely immunity from liability." *Estate of Anderson-Coughlin*, 2017 WL 6624020, *4. The Court cannot justify imposing the burdens of discovery on the Government based on Plaintiffs' vague assertions that the Contract is "riddled with provisions which require further investigation." ECF No. 11 at 6. Accordingly, Plaintiffs' request for jurisdictional discovery is denied. The Court has concluded that EMS, through its driver, Grayson, was performing its duties as an independent contractor rather than an employee of the Postal Service at the time of the accident.

Accordingly, Plaintiffs' claim against the Government based on *respondeat superior* liability for Grayson's negligence is barred by the independent contractor exception to the FTCA's waiver of sovereign immunity and thus must be dismissed for lack of subject matter jurisdiction.

### B. Plaintiffs' direct liability claims are barred by the discretionary function exception

Plaintiffs allege that USPS contracted with EMS to deliver mail "without ensuring that it had checked its drivers' backgrounds and driving histories, without knowing whether the drivers were qualified, and without knowing whether they were trained and supervised." ECF No. 1 ¶ 19. Thus, Plaintiffs assert that the Government "knew or should have known" that EMS "would provide incompetent drivers to pick up and deliver mail" and is liable for negligent hiring, training, supervision, entrustment, retention, and contracting with respect to Grayson and/or EMS. *Id.* ¶ 18–19. The Government contends that these claims are barred by the discretionary function exception. ECF No. 7 at 12–16.

The discretionary function exception provides that the Government's waiver of sovereign immunity under the FTCA does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency

or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.

§ 2680(a). The Supreme Court discussed the discretionary function exception in *United States v. Gaubert*, 499 U.S. 315 (1991):

> The exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," and "it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies. The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive."
>
> Furthermore, even "assuming the challenged conduct involves an element of judgment," it remains to be decided "whether that judgment is of the kind that the discretionary function exception was designed to shield." Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," when properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy."

*Id.* at 322–23 (citations omitted). With regard to the violation of regulations, the *Gaubert* court stated:

> if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.
>
> On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

*Id.* at 324. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

Applying these principles, the Supreme Court has developed a two-step test to determine whether the discretionary-function exception applies. *St. Tammany Parish v. FEMA*, 556 F.3d 307,

323 (5th Cir. 2009) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988)). First, the court asks whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations—in other words, whether the conduct is a "matter of choice for the acting employee." *Id.* The mere existence of a statute, regulation, or policy governing the conduct of a federal employee does not render such conduct non-discretionary. *See Gaubert*, 499 U.S. at 324. Second, if the conduct involves such discretion, the court must determine whether it is the kind of judgment that the discretionary function exception was designed to shield. *Id.* The exception was designed to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy and thus protects only governmental actions and decisions based on considerations of public policy. *Id.*

With respect to the first question, Plaintiffs fail to identify any controlling statute, regulation, or policy governing the hiring, training, supervision, entrustment or retention of Grayson or the decision to contract with EMS. Instead, Plaintiffs appear to misconstrue the Government's application of the discretionary function exception as a defense to its *respondeat superior* liability for Grayson's alleged negligence. Plaintiffs argue that the discretionary function exception does not bar their claims because "drivers have no discretion as to their schedules and their destinations," which are "predetermined by Defendant." ECF No. 11 at 7. As explained above, however, Plaintiffs' claim that the United States is liable for Grayson's negligent driving is barred by the independent contractor exception. The Government raises the discretionary function exception to its waiver of sovereign immunity under the FTCA not as as a bar against Plaintiffs' derivative claims, but as a bar against Plaintiffs' direct liability claims against the Government for negligent hiring, training, supervision, retention, and contracting.

The Postal Service did not violate any controlling statute, regulation, or policy in electing to enter into a contract with EMS. Indeed, Congress explicitly granted USPS the discretion to negotiate and execute contracts providing for mail transportation services. *See* 39 U.S.C. § 5005(a)(3) (stating that the USPS may obtain mail transportation service "by contract from any person or carrier for surface and water transportation under such terms and conditions as it deems appropriate"). The parties have not identified any federal statutes or regulations that prescribes the manner in which the Postal Service must train, supervise, or manage its contractors, nor has the Court become aware of any such statute or regulation. *See also Jones*, 2013 WL 2477288, at *7 ("With regard to [plaintiff's] claims of negligent oversight by the Postal Service, we know of no federal statute or regulation that dictates the manner in which the Postal Service is required to oversee its contractors or assure that its contractors comply with federal regulations and the provisions of the HRC [sic] contracts."); *Estate of Anderson-Coughlin*, 2017 WL 6624020, at *5 ("Plaintiffs, however, do not—and cannot—point to any prescribed course of action the Postal Service must follow in monitoring or policing the supplier's compliance with the specifications in the contract and other safety requirements."). Accordingly, the Court concludes that the Postal Service's conduct in supervising the performance of EMS and its drivers under the Transportation Contract was discretionary.

Turning to the second step of the discretionary-function analysis, the decision to award a government contract to a nongovernmental entity is generally protected by the discretionary function exception because it involves considerations of public policy. *See Guile*, 422 F.3d at 231 ("[A] decision to hire a contractor and the choice of contractor are policy-based discretionary decisions.") (citing *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995)); *Williams*, 50 F.

3d at 310 ("[T]he case law clearly establishes that the award of contracts falls within the ambit of the discretionary function exception").

Here, in affording USPS the discretion to transport mail through independent contractors rather than government vehicles and employees, Congress specifically required that the Postal Service determine which mode of transportation "best serves the public interest, due consideration being given to the cost of the transportation service under each mode." 39 U.S.C. § 5005(c). Such considerations—serving the public interest and fiscal responsibility—clearly involve public policy considerations. *See Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir. 1980) (stating that "matters involving balancing of policy considerations in advancing the public interest" fall within the scope of the discretionary function exception); *Jones*, 2013 WL 2477288, at *8 ("Judgments regarding the manner in which to allocate government resources most efficiently are quintessentially discretionary policy decisions of the sort that courts typically recognize that Congress intended to protect."); *Miller v. United States*, 642 F. Supp. 2d 437, 440, 443 (M.D. Pa. 2009) (finding that a federal agency's decision "was susceptible to policy analysis, with the underlying policies being the economic concerns"); *see also* ECF No. 7-1, Slaughter Decl. ¶ 4 (noting that the Postal Service determines whether to use a contractor to perform USPS duties based on a variety of policy considerations, including whether contracting is "more cost-effective, fiscally prudent, or in furtherance of promoting a safer and more efficient distribution of the mail").

The Postal Service's supervision of the Transportation Contract and EMS and its dirivers is likewise protected by the discretionary function exception. Such supervisory conduct requires USPS to determine how to monitor performance under the contract, which involves not only considerations of cost and efficiency, but also a weighing of governmental priorities, such as the

safety and reliability of the mail delivery system.[2] "Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function." *Guile*, 422 F.3d at 231. When an agency determines the extent to which it will supervise a private contractor's compliance with government regulations, the Supreme Court has held that the agency is "exercising discretionary regulatory authority of the most basic kind." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819–820 (1984) (government had discretion to establish and implement mechanism for enforcing compliance with minimum safety standards and its decision to use spot check program and application of that program to the particular aircraft involved protected policy decisions). Such decisions necessarily involve the kind of "considerations of public policy" that the discretionary function exception was designed to shield from "judicial 'second-guessing.'" *Gaubert*, 499 U.S. at 323.

The Government's decision to contract with EMS and and its role in overseeing the performance of the Transportation Contract represent precisely the species of choices the discretionary function exception was intended to protect. *Walding*, 955 F. Supp. 2d at 802; *see Jones*, 2013 WL 2477288, at *7 ("[I]t is beyond controversy that both the Postal Service's decision to hire [an HCR supplier] as well as subsequent decisions relating to the manner in which the Postal Service supervised and monitored [the supplier]'s performance under the contract involve

---

[2]     Even if EMS and Grayson were USPS employees at the time of the collision—and the Court has concluded that they were not—Plaintiffs' direct liability claims for negligent hiring, training, supervision, and retention would be barred by the discretionary function exception. Courts in the Fifth Circuit have consistently held that the Government's employment decisions are the kind of judgment that the discretionary function exception was meant to shield. *See, e.g., Dorsey v. Relf*, No. 4:12-CV-021-A, 2013 WL 791604, at *5 (N.D. Tex. Mar. 4, 2013) ("Decisions regarding hiring, supervising, training, and retaining employees involve many public policy considerations and matters of judgment and choice"), *aff'd*, 559 F. App'x 401 (5th Cir. 2014); *Walding v. United States*, 955 F. Supp. 2d 759, 802 (W.D. Tex. 2013) ("Courts have . . . generally held that decisions relating to hiring, training, and supervision of employees" are shielded by the discretionary function exception). Decisions concerning the supervision of government contractors and their subcontractors or employees in the performance of their duties are subject to many of the same considerations as decisions about employees.

elements of judgment and choice . . ."); *Estate of Anderson-Coughlin*, 2017 WL 6624020, at \*5–6 (concluding that the Postal Service's selection, retention, and supervision of an independent contractor as an HCR supplier was discretionary); *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005) ("[T]he discretionary function exemption protects the government from liability for claims premised on the lack of training, oversight, or qualifications of [the contractor's employees], since the government acted within its discretion to contract those responsibilities out to [the contractor].").

Plaintiffs' contention that USPS failed to properly vet EMS and its drivers may very well be accurate. ECF No. 1 ¶ 19. But the discretionary function exception applies "whether or not the discretion be abused." 28 U.S.C. § 2680(a). The Court cannot reach the merits of Plaintiffs' direct negligence claims because they are barred by the discretionary function exception. Thus, Plaintiffs' claims for negligent hiring, training, supervision, entrustment, retention, and contracting with respect to Grayson and/or EMS are dismissed for lack of subject matter jurisdiction.

### C. Plaintiffs' gross negligence claim is barred by the FTCA

Plaintiffs assert that the Government committed gross negligence. However, they fail to specify which conduct—by Grayson, EMS, or the Postal Service—rises to the level of gross negligence. ECF No. 1 at 5–6. Instead, after outlining their claims for derivative liability for Grayson's negligent driving and direct liability for the Postal Service's negligent contracting, Plaintiffs simply allege that "[t]he above-referenced acts and/or omissions by Defendant constitute gross negligence and/or malice" as those terms are defined in Sections 41.001(7) and 41.001(11) of the Texas Civil Practice and Remedies Code. *Id.* ¶ 21.

Gross negligence consists of both objective and subjective elements. To establish gross negligence, a plaintiff must prove that "(1) when viewed objectively from the defendant's

standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 41.001(11)). As the Texas Supreme Court repeatedly has emphasized, "what separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005) (citing *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981) (the "mental attitude of the defendant" is what turns ordinary negligence into gross negligence)). Likewise, "malice" requires "a specific intent by the defendant to cause substantial injury or harm to the claimant." TEX. CIV. PRAC. & REM. CODE § 41.001(7).

Because Plaintiffs' gross negligence claim arises out of the same conduct as their claims sounding in ordinary negligence, the Government is shielded from liability for such conduct under the independent contractor and discretionary function exceptions for the same reasons described above. Thus, the only difference between Plaintiffs' claims for ordinary negligence and their gross negligence claim is the tortfeasor's state of mind: "Defendant was aware of the risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others." ECF No. 1 ¶ 21. However, where the award of damages depends upon "proof that the defendant has engaged in intentional or egregious misconduct" and the purpose of the damages is to punish the tortfeasor, such damages cannot be recovered under the FTCA. *Molzof v. United States*, 502 U.S. 301, 312 (1992).

Section 2674 of Title 28 provides that the United States "shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable . . . *for punitive damages*." 28 U.S.C. § 2674 (emphasis added). The Supreme Court has concluded that Section 2674 "bars the recovery of what are legally considered 'punitive damages' under traditional common-law principles." *Molzof*, 502 U.S. at 312. Damages that depend on proof of the Government's "conscious indifference to the rights, safety, and welfare of others" constitute "punitive damages" under both traditional common-law principles and Texas law. *See Clements v. Steele*, 792 F.2d 515, 517 (5th Cir. 1986) ("Proof of the defendant's state of mind is necessary to support a finding of gross negligence and an award of punitive damages under Texas law); TEX. CIV. PRAC. & REM. CODE § 41.003 (permitting recovery of exemplary damages if the claimant proves that fraud, malice, or gross negligence caused the harm at issue); *id.* § 41.001(5) (defining "exemplary damages" as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes").

Plaintiffs do not specifically mention punitive or exemplary damages in their Complaint. *See* ECF No. 1. However, to the extent that they intend to include punitive damages in their request for "any further and additional relief at law or in equity that this Court may deem appropriate or proper," ECF No. 1 ¶ 30, Plaintiffs are barred from recovering such damages under the FTCA. *Molzof*, 502 U.S. at 312. Accordingly, Plaintiffs' claim for gross negligence is barred for lack of subject matter jurisdiction.

### D.  Plaintiffs' request for leave to file an amended complaint is denied

Plaintiffs seek leave to file an amended complaint curing any jurisdictional defects. *See* ECF No. 11 at 2. A district court may consider the futility of an amendment in deciding to grant leave to amend. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). If an

amendment would be futile, it may be disallowed. *Emory v. Tex. State Bd. Of Med. Exam'rs*, 748 F.2d 1023, 1027 (5th Cir.1984).

Plaintiffs seek to amend the original complaint over which the district court lacks subject matter jurisdiction. Accordingly, the Court would lack subject matter jurisdiction over any proposed amended complaint. *See Huff v. Neal*, 555 F. App'x 289, 299 (5th Cir. 2014) ("Because the court lacks subject matter jurisdiction over [the plaintiff's] FTCA claims, amendment to his complaint would have been futile."). Plaintiffs' motion for leave to file an amended complaint is futile and is therefore denied.

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss (ECF No. 7) is **GRANTED**. The Clerk shall enter judgment that Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is so **ORDERED**.

**SIGNED** this 5th day of March, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE